The opinion of the Court was afterward delivered by
Putnam J.
This case is as unimportant in regard to the amount of property involved in it, as it is important and fruitful in legal questions. The main question is, whether the particular average loss amounts to five per cent, within the meaning of the policy.
The questions which the counsel have raised are :
1. Whether the percentage shall be calculated upon the *272 nominal valuation in the policy, or upon that valuation after deducting the premium.
2. Are distinct successive losses to be added together to make up the five per cent.
3. Were the temporary repairs and supplies which were made abroad, chargeable to the account of the general average, as the defendants contend, or to the account of particular average, as the plaintiff contends.
4. Whether the deduction of one third new for old, shall be made from the gross amount of the expenses of the repairs, or from the balance remaining after the sum obtained by the sale of the old materials has been deducted from the gross amount.
5. Whether the defendants are chargeable for the loss of the hawser which was swept off the deck in» the boat, or for the new stay, or for the charge of commissions upon the renairs at home, or for the survey which was had at home.
In regard to the first question raised, we believe the custom is not uniform, but that the prevailing usage is, to deduct the premium from the valuation, and to calculate the percentage upon the balance.[1] And we adopt that rule. It applies only to the adjustment of particular, and not ,o- general average losses : for in the latter, the ship, cargo and freight are to contribute respectively, according to the actual value of each, and the owner of one of these subjects of contribution, is not bound by the agreement which the owner of another of them may have made with the insurer.
. And we are of opinion, as to the second question, that distinct and successive losses are not to be added together, in order to make up the five per cent; but that the damage from disasters happening at one time, or in one continued gale or storm, is to be considered by itself. If this were otherwise, the insurers would be called upon to pay for a great many trifling losses which should be borne by the assured as coming within the common wear and tear of the ship. It was to prevent such claims, that the clause in the- policy now under consideration was introduced. This is according-to the English prac *273 tice. Stev. on At. 214. But it may be otherwise in regard to the cargo, because the actual damage received at different times cannot be ascertained during the passage, or when it happens, but only when the cargo is unladed. 1 Phillips on Ins. 493, 494. [2]
As to the third question, it is contended for the defendants, that the temporary repairs should be charged to general average ; and we are referred to Plummer v. Wildman, 3 Maule & Selw. 482 ; which in several particulars resembled the case at bar. The ship had been run foul of, and so much damaged as to make it necessary to return to her port to repair, to enable her to perform the voyage, and she was afterwards completely repaired at the end of the voyage. The expenses of repairs, which were made abroad, which were strictly necessary to enable the ship to perform her voyage, were placed to the account of general average. Bayley J. doubted whether the repair of a particular damage could be placed to the account of general average, inasmuch as it is a benefit done to the ship.
The Court considered those repairs only under the account of general average, which were absolutely necessary for the enabling of the ship to pursue her voyage ; and all beyond were to be set down to the account of the ship. “ Therefore deducting the benefit, if there be any, which still results to the ship from the repair, the rest may be placed to the account of general average.”
The case at bar furnishes an illustration' of the doctrine adopted in Plummer v. Wildman ; for the expenses of the supplies and repairs of the damage in the September gale, were of some benefit to the ship. The old boat, camboose, and mainsail, were sold at Salem for the account of the owner.
The expenses attending that disaster, are therefore to be placed to the account of the particular average. But the expenses of the repairs at the Balize seem, from the evidence detailed by the auditors, to have been of strict necessity, and were of no value to the ship after her return to Salem. They amount to 104 dollars 57 cents, and should be charged to the general average.
*274 It is objected, however, that the vessel might have been completely repaired abroad ; and the fact is proved ; but the expenses would very greatly have exceeded the complete repairs at Salem. We think the master had a right to ex ercise a sound discretion upon that matter, and that the defendants are liable for the expenses of the temporary repairs of the damage in the September gale, which are to be added to the complete repairs at Salem : which sums together are to be considered the expenses of repairing the damage sustained in that gale.[1]
We are next to consider, whether the allowance of one third new for old shall be deducted from the gross amount of the expenses for the repairs, or from the balance remaining after the sums obtained for the old boat, camboose and main sail, have been deducted.
This point has not been judicially settled in this State. Mr. Phillips (vol. 1, p. 371) considers the old materials to belong to the insurer, and that the amount of the sale of them shall be allowed towards the sum which he is liable to pay for the loss ; and that the deduction of one third new for old shall be made from the gross amount of the expenses for repairs On the contrary, in New York the one third is not deducted from the gross amount, but from the balance after the old materials have been applied towards the repairs ; and the old materials are considered as belonging to the assured. And this rule appears to us to be the best. We do not see how the property in the old materials has changed and become the property of the insurer. There has not been any abandonment of the old materials. If the owner should do the work and apply the old materials towards it, we think that the amount of the expenses after such application should be the cost of the repairs, and the sum from which one thir new for old should be deducted. Byrnes v. National Ins. Co. 1 Cowen, 265.[1]
In the case at bar, the cost of the temporary repairs is to be added to the cost of the complete repairs at Salem ; from *275 which the sum obtained for the old boat &c. is to be deducted and then the deduction of one third new for old is to be made. It may be true, that some of the articles supplied were no better than those lost, — iron strap for dead-eye, for example, — but we do not know any thing excepted from the rule of one third new for old, but an anchor.[2] Perhaps it may be true that an old anchor which has been proved, is "better than a new one.
And as to the items referred to in the 5th place, we think the auditors properly excluded the cost of a new hawser from the plaintiff’s claim. It is a matter of common information, that it should have been stowed in the hold with the cables on the passage, and not in the boat on deck. The -ssured is not to recover for a loss occasioned by his own íegligence or that of his servants. Roccus Mar. Law (on Insurance), note 22.
So the claim for a new stay was properly disallowed. It parted in the wake of the bowsprit several months after the September gale, and was the only injury which was sustained when it parted.
And we do not think that the plaintiff is entitled to charge a commission upon the expenses of repairs at home. So the Supreme Court of Errors in Connecticut have determined. Sage v. The Middletown Ins. Co. 1 Connect. R. 242. “ He might (say they) with equal propriety charge in all cases on the gross sum paid by him to his agent, including his commission on the commission paid to the agent.” Anonymous, 1 Johns. R. 312, S. P. The charge by a merchant or factor abroad, of commission upon his disbursements, stands upon different ground and makes a part of the necessary expenses for which the insurer is liable.
And we do not think the charge of the survey at Salem should be added to make up the five per cent. That is the rule according to the ordinance of Hamburgh. 1 Phillips, 497. Whether or no five per cent loss has happened at one time during the voyage, is a question which cannot be affected by the mode adopted to prove it. It cannot be considered as part of the loss.
*276 The opinion which we have formed rests on the basis, that ^le captain has conducted himself with good faith in the exercise of his discretion, in making the temporary repairs abroad and the permanent ones at home. And considering all the circumstances, we think he judged wisely. The old boat and camboose, poor as they were, were the only ones which could be procured at the port of necessity ; and the main sail, though repaired on board as well as the people could do it, was not put in as good a condition as when the sail was split. And as to the complaint, that the defendants are to be liable for doing the work over and over again, at the Balize, at the Havana, and at Salem, the answer is, that the captain, acting in good faith, has thought it necessary so to conduct the business.
We have not made any calculation to ascertain what the result will be. The parties are to make it upon the principles we have declared, and if they cannot agree, we shall refer the case to the auditors to make the computation ; and the judgment will be rendered accordingly.

 See 2 Phillips on Ins. 213, 346.

 See Donnell v. Columbian Ins Co. Sumner, 375 et seq.

 See 2 Phillips on Ins. 233, et seq., 263.

 See Dickey v. New York Ins. Co. 4 Cowen, 222; American Ins. Co. v Center, 4 Wendell, 45; Amer. Jurist, vol. 5, pp. 252, 262; vol. 6, p. 45.

 Eager v. Atlas Ins. Co. 14 Pick. 141; 3 Kent, (3d ed.) 339.